E-FILED
Monday, 27 July, 2026 10:50:09 PM
Clerk, U.S. District Court, ILCD

**THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**KANKAKEE DIVISION**

| | |
|---|---|
| Debra Michniak and David Ritchie, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Riverside Health System,<br><br>*Defendant*. | Civil Action No. 2:26-cv-02059<br><br>Hon. Chief Judge Colin Stirling Bruce<br><br>Hon. Magistrate Judge Eric I. Long |

**DEFENDANT RIVERSIDE HEALTH SYSTEM'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................ 1
FACTUAL ALLEGATIONS ........................................ 2
ARGUMENT ........................................ 5
I. Legal Standard ........................................ 5
II. The Court Should Dismiss Plaintiffs' Wiretap Act Claim ........................................ 5
A. Plaintiffs Do Not Plausibly Allege That Riverside Intercepted The "Contents" of Their Communications ........................................ 6
B. Plaintiffs' ECPA Claim is Barred By The One-Party Consent Rule ........................................ 9
1. Riverside Is a Party to Every Communication on Its Own Website ........................................ 9
2. Plaintiffs Fail to Plead the Crime-Tort Exception to the ECPA's One-Party Consent Rule ........................................ 10
a. *Riverside's Alleged Purpose Was Commercial, Not Criminal or Tortious* ........................................ 10
b. *The Crimes and Torts Plaintiffs Attempt to Allege Are Not Independent of the Interception* ........................................ 12
c. *The Predicate Offenses Fail on Their Own Terms* ........................................ 14
III. Plaintiffs Fail to State a Negligence Claim ........................................ 17
A. Plaintiffs Fail to Allege a Duty of Care Recognized by Illinois Law ........................................ 18
CONCLUSION ........................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Hosp. Ass'n v. Becerra*
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....8, 15, 16

*In re Apple Data Privacy Litig.*
824 F. Supp. 3d 888 (N.D. Cal. 2026) ....7

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ....5, 12

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ....5

*Brooks v. Ross*
578 F.3d 574 (7th Cir. 2009) ....5

*Brown v. State Farm Mut. Auto. Ins. Co.*
2025 WL 81340 (N.D. Ill. Jan. 13, 2025) ....20

*Caro v. Weintraub*
618 F.3d 94 (2d Cir. 2010) ....11, 12, 13

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*
887 F.3d 803 (7th Cir. 2018) ....18

*Cooney v. Chicago Public Schools*
943 N.E.2d 23 (Ill. App. Ct. 2010) ....18, 19

*Cuyler v. United States*
362 F.3d 949 (7th Cir. 2004) ....20

*Doe 1 v. Chestnut Health Sys., Inc.*
2025 WL 1616635 (C.D. Ill. June 6, 2025) ....11, 14, 21

*Doe v. Genesis Health Sys.*
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ....11, 21

*In re DoubleClick Inc. Privacy Litig.*
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*
806 F.3d 125 (3d Cir. 2015) ....6, 9, 12

*Goplin v. WeConnect, Inc.*
893 F.3d 488 (7th Cir. 2018) ....................................................................................7

*Goulart v. Cape Cod Healthcare, Inc.*
2025 WL 1745732 (D. Mass. June 24, 2025) ....................................................11, 14

*Hannant v. Culbertson*
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ..........................................................7

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................................7

*Jacobs v. Hanwha Techwin Am., Inc.*
2021 WL 3172967 (N.D. Ill. July 27, 2021) ..............................................................5

*Kirk v. Michael Reese Hosp. & Med. Ctr.*
513 N.E.2d 387 (Ill. 1987) .......................................................................................19

*Kurowski v. Rush Sys. for Health*
659 F. Supp. 3d 931 (N.D. Ill. 2023) .......................................................................10

*Kurowski v. Rush Sys. for Health*
683 F. Supp. 3d 836 (N.D. Ill. 2023) .......................................................................19

*Miller v. Harris*
2013 IL App (2d) 120512 ..........................................................................................21

*Nguyen v. Abbott Labs., Inc.*
2026 WL 579206 (N.D. Ill. Mar. 2, 2026) ......................................................6, 14, 15

*Nienaber v. Overlake Hosp. Med. Ctr.*
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .................................................................14

*Okash v. Essentia Health*
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ..........................................................7, 14

*Palm v. 2800 Lake Shore Drive Condo. Ass'n*
2014 IL App (1st) 111290 ..........................................................................................22

*Parkson v. Cent. DuPage Hosp.*
105 Ill. App. 3d 850 (1st Dist. 1982) .......................................................................19

*People, Dep't of Pro. Regul. v. Manos*
326 Ill. App. 3d 698 (1st Dist. 2001) .......................................................................19

*In re Pharmatrak, Inc. Privacy Litigation*
329 F.3d 9 (1st Cir. 2003) .........................................................................................13

*Ramos v. Gap, Inc.*
2025 WL 2144837 (N.D. Cal. July 29, 2025) ........ 7

*Reiser v. Residential Funding Corp.*
380 F.3d 1027 (7th Cir. 2004) ........ 18

*Smith v. Loyola Univ. Med. Ctr.*
2024 WL 3338941 (N.D. Ill. July 9, 2024) ........ 7, 16

*Sotelo v. DirectRevenue, LLC*
384 F. Supp. 2d 1219 (N.D. Ill. 2005) ........ 17

*Stewart v. Parkview Hosp.*
940 F.3d 1013 (7th Cir. 2019) ........ 20

*Sussman v. Am. Broad. Cos., Inc.*
186 F.3d 1200 (9th Cir. 1999) ........ 11, 12, 13

*United States v. Birkenstock*
823 F.2d 1026 (7th Cir. 1987) ........ 11

*United States v. Fard*
775 F.3d 939 (7th Cir. 2015) ........ 17

*Vasil v. Kiip, Inc.*
2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) ........ 6, 8

*Watson v. Franciscan Alliance, Inc.*
2026 WL 1694563 (N.D. Ill. June 11, 2026) ........ 15

*In re Zynga Privacy Litig.*
750 F.3d 1098 (9th Cir. 2014) ........ 6, 7, 8

**<u>Statutes, Rules and Regulations</u>**

Fed. R. Civ. P. 12(b)(6) ........ 2, 5, 22

HIPAA, 42 U.S.C. § 1320d-6(a) ........ 14

Burial of Dead Bodies Act, 410 ILCS 5 ........ 17

Pen Register Act, 18 U.S.C. § 3127(3) ........ 8

Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. ........ *passim*

45 C.F.R. § 160, *et seq*. ........ *passim*

**Other Authorities**

114 Cong. Rec. 14694 (daily ed. May 28, 1968) (statement of Sen. Hart) ....................................13

## INTRODUCTION

This lawsuit is a textbook example of a cottage industry that has emerged in recent years. Here's how it works: Plaintiffs' lawyers identify a healthcare provider whose public-facing website uses Google Analytics and Microsoft Advertising—the same commercially available tools embedded on millions of websites in every sector of the economy—and file a class action complaint alleging that the mere *existence* of those tools violates the federal Wiretap Act. And then, counsel files a complaint laden with hundreds of paragraphs of background material about internet tracking, HIPAA regulations, and the value of health data. But this pleading strategy is designed to obscure a fundamental deficiency—the named plaintiffs have not suffered any concrete or real-world harm.

Plaintiff's case comes straight from the "no injury" playbook. Despite more than three-hundred paragraphs of allegations, neither Plaintiff identifies a single piece of confidential health information that was actually disclosed to any third party. The only data the Complaint concretely ties to either of them is a collection of URLs for publicly accessible webpages, click-event labels, IP addresses, and cookie values—the basic technical byproducts of browsing any website. Because no cognizable injury flows from the collection of such routine data, the only thing sustaining this lawsuit is the prospect of **$10,000**, *per class member*, in statutory damages under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2520—a windfall manufactured by counsel and designed to leverage the hydraulic pressure of potential class-wide liability into a settlement of non-meritorious claims.

The courts of this District have not hesitated to dismiss materially identical suits, and the Complaint here deserves the same fate. Here, Plaintiffs' ECPA claim fails for two independent reasons. ***First***, the ECPA only prohibits intercepting the "contents" of a communication—its substance, purport, or meaning—as distinguished from "record information" such as addresses,

routing data, and subscriber identifiers. Significantly, the *only* data the Complaint ties to the named Plaintiffs—URLs, click-event labels, IP addresses, and cookie values—is mere record information as a matter of law. ***Second***, even if those data points could be characterized as divulging the "contents" of Plaintiffs' communications, Riverside is immunized from liability under the ECPA's one-party consent provision, 18 U.S.C. § 2511(2)(d). That is because Riverside was a party to every communication on its own Website. And the Complaint's allegations do not viably plead around Riverside's one-party consent defense.

Plaintiffs' negligence claim fares no better: binding Seventh Circuit precedent confirms that Illinois law does not recognize a common law duty to safeguard personal information, and none of Plaintiffs' alternative duty theories overcomes that threshold obstacle.

Accordingly, this Court should follow the well-established course set by this District and dismiss the Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL ALLEGATIONS

Defendant Riverside Health System ("Riverside") is a nonprofit, integrated healthcare system based in Kankakee, Illinois. (Compl. ¶¶ 35–36.) Riverside operates a public-facing website at www.riversidehealthcare.org (the "Website"), which patients may use to locate physicians, browse medical specialties and facility locations, access billing and insurance resources, and reach the MyChart patient portal. (*E.g.*, Compl. ¶¶ 5, 92, 246.) The two named Plaintiffs—Debra Michniak ("Michniak") and David Ritchie ("Ritchie")—are Illinois citizens who have been Riverside patients since at least 1999 and 2000, respectively, and who have allegedly used the Website on numerous occasions to access healthcare services through Riverside. (Compl. ¶¶ 33–34, 49–50.)

Plaintiffs' claims center on Riverside's alleged embedding of code from Google Analytics, Google DoubleClick, Microsoft Advertising, and Microsoft Clarity (collectively, the

"Tracking Tools") on its Website, which the Complaint alleges was done for the "sole purpose" of enhancing Riverside's "marketing and profits." (Compl. ¶¶ 7, 48, 222.)

According to the Complaint, when users interact with the Website, the Tracking Tools transmit what Plaintiffs collectively label "Private Information" to Google, Microsoft, and other unnamed third parties. (Compl. ¶¶ 4, 7–8, 58, 83–87.) As Plaintiffs define it, "Private Information" encompasses "personally identifiable information" ("PII")—a term the Complaint coins but does not define—as well as "protected health information" ("PHI") and "individually identifiable health information" ("IIHI"), both terms of art under HIPAA. (Compl. ¶¶ 4, 145–146; *see also* 45 C.F.R. § 160.103.)[1]

The Complaint alleges that the Private Information transmitted by the Tracking Tools included:

- (i) users' "status as medical patients" (Compl. ¶¶ 15, 118);
- (ii) the "medical conditions and specialties," and "treatments or therapies" that users searched for (Compl. ¶¶ 15, 107, 118);
- (iii) "the names and profiles of healthcare providers viewed by Users" (Compl. ¶¶ 15, 107);
- (iv) the Riverside "facility locations selected or searched by Users" (Compl. ¶¶ 15, 107, 118);
- (v) "the content of Users' free-text searches conducted via the Website's search bar" (Compl. ¶¶ 15, 107);
- (vi) the full-string URLs of pages that users visited, which the Complaint alleges, without further elaboration, "encode[s] and reflect[s] the substance of Users' healthcare-related browsing activity" (Compl. ¶¶ 15, 107);
- (vii) click events—described by the Complaint as "discrete tracked event[s]"—captured when users "click to sign in to the patient portal, click to pay a bill," or click to call a provider's phone number (Compl. ¶¶ 15, 107);

[1] Whether the data the Complaint alleges was disclosed with respect to the named Plaintiffs actually constitutes PHI and IIHI is, as discussed below, a central deficiency in the Complaint.

- (viii) "appointment requests and booking information" (Compl. ¶ 118); and
- (ix) users' IP addresses and certain cookie values that the Complaint characterizes as "unique cookie identifiers associated with Google and Microsoft tracking technologies" (Compl. ¶¶ 15, 107, 119).

However, these categories are drawn from the Complaint's *class-wide* allegations, which describe the Private Information transmitted by the Tracking Tools only in terms of what was disclosed as to "Users" generally—*not as to any particular user* or on any particular occasion. (*See* Compl. ¶¶ 107, 118.) The only user-specific allegations pertain to Michniak and Ritchie (the named Plaintiffs), and their allegations are limited to identifying a series of URLs that Riverside allegedly caused to be transmitted from Michniak's and Ritchie's web browsers to Google and Microsoft through the Tracking Tools. (Compl. ¶¶ 234, 246.)

Those URLs correspond to publicly accessible pages on Riverside's Website: *i.e.*, pages displaying biographical and practice information for individual physicians; directory pages listing physicians within a particular medical specialty; pages identifying the addresses and contact information for specific Riverside facilities and campuses; pages describing the medical services and clinical specialties Riverside offers; the login page for MyChart (Riverside's patient portal); the landing page for Riverside's online scheduling interface; informational pages listing accepted insurance plans; and Google Analytics collection endpoints reflecting "click_to_call" events. (*See* Compl. ¶¶ 234, 246.)

Plaintiffs further allege that these URLs were transmitted to third parties alongside what Plaintiffs characterize as "personal identifiers." The only such identifiers Plaintiffs say were transmitted as to them, however, are IP addresses and cookie values associated with Google and Microsoft tracking technologies. (Compl. ¶¶ 235, 247.)

Plaintiffs also allege that Riverside made representations to Website users regarding its data privacy practices—including through a banner stating that cookies on its Website were not used "for tracking purposes," (Compl. ¶ 127), and through its Notice of Privacy Practices, which represented that Riverside would not use or disclose medical information for marketing without prior written authorization. (Compl. ¶ 126.) Plaintiffs also allege that they did not consent to the disclosure of their information to third parties. (Compl. ¶ 19.)

Based on these allegations, Plaintiffs assert two causes of action: (1) violation of the federal Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, and (2) common law negligence. (Compl. ¶¶ 277–305, 306–322.)

## **ARGUMENT**

### I. Legal Standard

A Rule 12(b)(6) motion to dismiss tests whether a complaint contains "'enough factual matter (taken as true)' to suggest that a plaintiff is entitled to relief." *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This means that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). While "courts must accept a plaintiff's factual allegations as true, [] some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### II. The Court Should Dismiss Plaintiffs' Wiretap Act Claim

To state a claim under the ECPA, Plaintiffs must plausibly allege that Riverside "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or

endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Nguyen v. Abbott Labs., Inc.*, 2026 WL 579206, at *3 (N.D. Ill. Mar. 2, 2026) (citing *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015)).

Plaintiffs fail to do so for two independent reasons. *First*, Plaintiffs do not plausibly allege that Riverside intercepted the "contents" of their communications, as opposed to so-called record information, which the ECPA does not prohibit intercepting. *Second*, interception or not, Riverside is immunized from liability under the ECPA's one-party consent rule because it was a party to each of the Plaintiffs' communications on its Website, and moreover, Plaintiffs' own allegations foreclose the crime-tort exception to the one-party consent defense.

### A. Plaintiffs Do Not Plausibly Allege That Riverside Intercepted The "Contents" of Their Communications

The Wiretap Act claim should be dismissed because Michniak and Ritchie do not plausibly allege that Riverside intercepted the "contents" of their communications—that is, the "substance, purport, or meaning" of those communications. 18 U.S.C. §§ 2510(4), (8); 2520(a). Under the governing intent-to-communicate test, information only constitutes "contents" when it reveals the message one person intended to convey to another, as opposed to "record information" about the communication itself. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *accord Vasil v. Kiip, Inc.*, 2018 WL 1156328, at *3–4 (N.D. Ill. Mar. 5, 2018). Indeed, Congress confirmed the distinction between "contents" and "record information" in 1986, when it enacted the ECPA and deliberately excised information disclosing "the identity of the parties to such communication" from the statutory definition of "contents." *Zynga*, 750 F.3d at 1106; *accord In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1062 (N.D. Cal. 2012).

Every piece of data that was allegedly intercepted from Michniak and Ritchie—each of which falls into one of three categories—is record information that does not disclose the "contents" of their communications.[2]

***First***, URLs (*i.e.*, a webpage address). The Complaint alleges Riverside caused the URLs of publicly accessible pages on its Website to be transmitted from Michniak's and Ritchie's browsers to Google and Microsoft. (Compl. ¶¶ 234, 246.) But these URLs record nothing more than where Michniak and Ritchie navigated on Riverside's website, which is quintessential record information. *See Zynga*, 750 F.3d at 1106 (holding that a webpage URL "functions like an 'address'," which is record information Congress "excluded … from the definition 'contents'"); *cf. Ramos v. Gap, Inc.*, 2025 WL 2144837 (N.D. Cal. July 29, 2025) (under state wiretap act, users clicking on URLs contained in marketing emails did not reveal "contents").[3]

---

[2] The Court need not credit Plaintiffs' conclusory allegations—which are lumped in alongside allegations about "Class Members" generally—that Riverside disclosed "their services selected, patient statuses, medical conditions, treatments, provider information and appointment information," as those allegations are not substantiated by any well-pled facts. *See Hannant v. Culbertson*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025) (rejecting allegations that defendant disclosed plaintiff's "status as a patient" and "patient portal activity" where plaintiff "provide[d] no detail as to what information was disclosed that demonstrated her patient status or what activities she took with respect to the patient portal"); *see also id.* ("an allegation that patient status was disclosed, standing alone, is closer to a legal conclusion than a factual allegation").

[3] Riverside recognizes that certain URLs allegedly transmitted to third parties contain the string "search-results" with appended text that might reflect user search inputs. (Compl. ¶¶ 234, 246.) Courts have sometimes held that URLs embedding search queries can disclose the contents of a user's communications. *See Smith v. Loyola Univ. Med. Ctr.,* 2024 WL 3338941, at *6 (N.D. Ill. July 9, 2024) (finding "contents" element satisfied by URLs with embedded search queries). But even assuming these particular URLs ***do*** contain embedded search queries—which Plaintiffs do not allege—they lead only to pages collecting links to other publicly accessible pages on Riverside's Website. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (Barrett, J.) (courts may take judicial notice of website contents); *see also Okash v. Essentia Health*, 2024 WL 1285779, at *2 n.1 (D. Minn. Mar. 26, 2024) (taking judicial notice of the contents of defendant's website in ECPA case). They thus serve the same addressing function that *Zynga* held does not divulge "contents." 750 F.3d at 1106–09; *cf. In re Apple Data Privacy Litig.*, 824 F. Supp. 3d 888, 900–01 (N.D. Cal. 2026) (under state wiretap act, URLs containing search terms for app names were not "communications"). And regardless of whether these particular URLs divulge the "contents" of Plaintiffs' communications, they cannot sustain an ECPA claim.

As set forth in Section II.B, *infra*, Riverside is a party to every communication on its Website and is therefore protected by the ECPA's one-party consent rule, 18 U.S.C. § 2511(2)(d), unless Plaintiffs

***Second***, click-to-call event labels. Certain Google Analytics collection URLs allegedly transmitted from Michniak's and Ritchie's browsers contain standardized tags recording that a "click" occurred on a phone-number element. (Compl. ¶¶ 234, 246.) These labels record the fact that a phone call was attempted, but they do not divulge the contents of any discussion that follows (or even if the recipient answered), and therefore constitute record information. Indeed, they are the digital equivalent of pen-register data, which federal law classifies as "dialing, routing, addressing, or signaling information" and distinguishes from "the contents of any communication." 18 U.S.C. § 3127(3) (Pen Register Act); *see also Zynga*, 750 F.3d at 1106 (holding that record information "regarding the characteristics of the message that is generated in the course of the communication" is not the "contents" of a communication under the ECPA).

***Third***, IP addresses and cookie values. The Complaint alleges that the URLs transmitted from Michniak's and Ritchie's browsers were accompanied by IP addresses and cookie values associated with Google's and Microsoft's tracking technologies. (Compl. ¶¶ 235, 247.) As the Complaint makes clear (Compl. ¶¶ 55, 80), these are automatically assigned device and session identifiers, and courts have uniformly classified such identifiers as record information rather than the "contents" of a communication. *See Zynga*, 750 F.3d at 1106–07 (holding that identifiers such as Facebook IDs are record information under the ECPA); *Vasil*, 2018 WL 1156328, at *2–3 (automatically generated GPS coordinates and device identifiers were record information).

In sum, the only data the Complaint alleges Riverside caused to be transmitted from the named Plaintiffs to Google and Microsoft—URLs, IP addresses, and cookie values—constitute

---

plead the crime-tort exception—which requires, at a minimum, a plausible predicate offense. The only conceivably viable predicate is HIPAA, which requires disclosure of individually identifiable health information. These URLs could not plausibly lead to such a disclosure: they direct only to public-facing, unauthenticated portions of Riverside's website, do not themselves identify either named Plaintiff, and do not disclose any health condition either Plaintiff alleges having. *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 801–03 (N.D. Tex. 2024).

"record information" as a matter of law. Plaintiffs' ECPA claim must therefore be dismissed for failing to plausibly allege that Riverside intercepted the "contents" of their communications.

### B. Plaintiffs' ECPA Claim is Barred By The One-Party Consent Rule

Plaintiffs' ECPA claim fails for another reason: Riverside is a party to every communication at issue, and the one-party consent provision of § 2511(2)(d) therefore bars their claim. The Complaint's allegations establish both that Riverside is a party to the communications and that Plaintiffs cannot invoke the crime-tort exception to overcome the ECPA's one-party consent defense.

#### 1. Riverside Is a Party to Every Communication on Its Own Website

Section 2511(1)(a) of the ECPA prohibits the intentional interception of electronic communications. *See* 18 U.S.C. § 2511(1)(a). Section 2511(2)(d), however, exempts from liability any "person" who is "a party to the communication"—unless that party intercepted the communication "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d).

The Complaint's allegations establish Riverside's party status. Plaintiffs allege they used Riverside's Website to access healthcare services and believed they were communicating with their healthcare provider. (Compl. ¶¶ 6, 49–50, 234, 240, 246, 252.) The Complaint's technical description of how Riverside's Website functions confirms the point: a patient sends an HTTP request to Riverside's server, which responds with the webpage and client-side code; only then does the browser send a separate background request to a third party. (Compl. ¶¶ 84–90.) Riverside is thus a party to every alleged communication. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d at 142–43 (holding that intended recipients are parties to the communication under the one-party consent exception); *Kurowski v. Rush Sys. for*

*Health*, 659 F. Supp. 3d 931, 937–39 (N.D. Ill. 2023) (holding that a healthcare provider was a party to communications directed to its website).

### 2. Plaintiffs Fail to Plead the Crime-Tort Exception to the ECPA's One-Party Consent Rule

Plaintiffs' allegations foreclose the crime-tort exception for three reasons. ***First***, Plaintiffs do not plausibly allege that Riverside deployed the Tracking Tools for the purpose of committing a crime or tort; to the contrary, they allege Riverside's "sole purpose" in doing so was commercial, and allege no facts establishing the specific intent necessary to plead the "purpose" element of the crime-tort exception. ***Second***, the crimes and torts Plaintiffs seek to allege are not "independent" of the interception itself, as the crime-tort exception requires. ***Third***, even setting aside purpose and independence, Plaintiffs do not plausibly allege that Riverside committed any of the crimes or torts they invoke.

#### a. *Riverside's Alleged Purpose Was Commercial, Not Criminal or Tortious*

Plaintiffs do not plausibly allege that Riverside deployed tracking technology for the purpose of committing a crime or tort. Rather, the Complaint unambiguously states that "[t]he ***sole*** purpose of the use of the Tracking Tools on Riverside's Website was marketing and profits." (Compl. ¶ 222 (emphasis added).) Plaintiffs allege that the Tracking Tools helped Riverside optimize ads, measure conversions, build audiences, and reduce marketing costs. (Compl. ¶¶ 13–14, 21, 111–114, 222–230.) The word "sole" here is dispositive. If Riverside's *only* purpose in deploying the Tracking Tools was commercial, then – as a matter of logic – there can be no room for an *additional* purpose of committing a criminal or tortious act.

Courts in this District and elsewhere have consistently held that a defendant's alleged use of tracking tools for marketing purposes is incompatible with the criminal or tortious purpose the ECPA's crime-tort exception requires. *See Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9

(C.D. Ill. Mar. 18, 2025) (dismissing ECPA claim where plaintiff alleged trackers were "used by the Defendant to benefit … its marketing and advertising purposes"); *Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *11–12 (C.D. Ill. June 6, 2025) (same, where defendant was alleged to have disclosed information "for the purpose of … enhanced marketing services"); *accord Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *3–4 (D. Mass. June 24, 2025) (dismissing ECPA claim and observing that "commercial purposes or advantages are not the stuff of which a crime-tort is made"); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) (dismissing ECPA claim where purpose of "mak[ing] money by providing a valued service to commercial Web sites" was not purpose of committing an alleged tortious act).

Even setting the "sole purpose" admission aside, the Complaint fails to plead the crime-tort exception because § 2511(2)(d)'s "for the purpose of" language requires Plaintiffs to allege that Riverside acted ***with the conscious object of*** committing a crime or tort beyond the interception itself. *See Caro v. Weintraub*, 618 F.3d 94, 100–01 (2d Cir. 2010); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999); *In re DoubleClick*, 154 F. Supp. 2d at 515 (exception reaches "only acts accompanied by a specific contemporary intention to commit a crime or tort"); *Genesis Health Sys.*, 2025 WL 1000192, at *9 (Congress's "for the purpose of" language "indicates that the 'crime-or-tort' exception requires a specific intent").

That standard requires Plaintiffs to allege more than that Riverside intended to deploy the Tracking Tools; they must allege that Riverside intended to violate the law. *United States v. Birkenstock*, 823 F.2d 1026, 1028 (7th Cir. 1987) ("A specific intent crime is one in which the defendant must not only intend the act charged, but also intend to violate the law."). The Complaint alleges nothing beyond Riverside's deployment of commercially available analytics

tools for ordinary marketing purposes—which does not, without more, give rise to a plausible inference of specific intent to violate the law—and therefore fails to plead the specific intent the crime-tort exception demands.[4]

**b. *The Crimes and Torts Plaintiffs Attempt to Allege Are Not Independent of the Interception***

Plaintiffs also fail to invoke the crime-tort exception because the crimes and torts Plaintiffs attempt to allege are merely recharacterizations of the act of interception itself—not wrongs *independent* of the interception, as courts have recognized is required to satisfy the exception. *Caro*, 618 F.3d at 100 (the crime-tort exception requires "a tortious or criminal act that is independent of the [interception]"); *Sussman,* 186 F.3d at 1202 (finding allegation "that the [interception] itself was tortious" insufficient to meet the requirements of the statute).

Crucially, "independent" in this context means a two-step sequence: the interceptor first acquires a communication and then deploys the fruits of that acquisition to commit a separate wrong. *In re Google Inc. Cookie Placement*, 806 F.3d at 145 ("the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits"). In other words, Plaintiffs must allege that Riverside committed two distinct acts, not one act characterized in multiple ways. *See Caro*, 618 F.3d at 100 (holding that plaintiffs invoking the ECPA's crime-tort exception "must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal ***act*** that is independent of the intentional ***act*** of recording") (emphasis added); *Sussman*, 186 F.3d at 1202–03 ("[w]here the taping is legal,

[4] No doubt, the Complaint contains bare assertions that Riverside's "purpose" was "tortious, criminal and designed to violate state constitutional and statutory provisions" (Compl. ¶¶ 158, 292). But these are "legal conclusion[s] couched as … factual allegation[s]" and are not accepted as true for purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678; *see also id.* ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

but is done for the purpose of facilitating ***some further impropriety***, such as blackmail, § 2511 [*i.e.*, the crime-tort exception] applies") (emphasis added).[5]

The Complaint's own allegations foreclose any claim of independence under this two-step, two-act framework. Rather than allege that Riverside first acquired Plaintiffs' communications and then later put the acquired data to some separate wrongful use, the Complaint alleges a single, simultaneous data transfer that Plaintiffs attempt to characterize as both the interception and a separate disclosure. The Complaint makes this plain by alleging that the Tracking Tools "contemporaneously and invisibly redirect the Users' communications to third parties." (Compl. ¶ 90; *see also* Compl. ¶¶ 73, 87, 105.) These allegations describe a single event—with no intervening step in which Riverside first captures data and then transmits it onward. Indeed, the Complaint concedes the point outright: it alleges that Riverside "assisted Google and Microsoft with intercepting Plaintiffs' communications" (Compl. ¶ 51). If Google's and Microsoft's receipt of the data is itself the "interception," then Riverside's alleged transmission of data to those third parties cannot simultaneously be an independent "disclosure"—the two are, by the Complaint's own terms, the exact same act.[6]

As alleged, the interception and the disclosure collapse into a single act, and Plaintiffs' efforts to attach different labels to that act (by calling it a HIPAA violation, wire fraud, trespass,

---

[5] The exception's legislative history confirms the point. As the Second Circuit traced in *Caro*, the amendment that produced § 2511(2)(d) targeted interceptions made "with an unlawful motive" to commit separate bad acts, such as "blackmailing the other party, threatening him, or publicly embarrassing him." 618 F.3d at 99–100 (quoting 114 Cong. Rec. 14694 (1968)). The court concluded that "it was not invasion of the right of privacy per se that Senator Hart wished to avoid through his proposal, but invasions and abuses that would result through use of the interception itself." *Id.*

[6] The case of *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 21–22 (1st Cir. 2003), shows why this is so. There, the First Circuit held that a third-party vendor "intercepted" user communications simply by receiving the HTTP requests that embedded website code caused the user's browser to send to the vendor's servers. *Id.* The same is true here: Google's and Microsoft's receipt of the redirected data is itself the interception, as Plaintiffs' own allegations make clear (*see* Compl. ¶ 51), and that transmission thus cannot simultaneously be a "disclosure" that satisfies the crime-tort exception's independent act requirement.

or actionable misrepresentation (Compl. ¶¶ 292–300)), does not manufacture the independence the statute requires. *See Chestnut Health Sys.,* 2025 WL 1616635, at *11–12 (dismissing ECPA claim where plaintiffs' own complaint alleged the tortious conduct occurred "simultaneously" and "contemporaneously" with the interception); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095–96 (W.D. Wash. 2024) (dismissing ECPA claim and holding plaintiff failed to plead any tortious or criminal use separate from the interception, even where the alleged conduct was "significantly more bifurcated" than a simultaneous redirect); *accord Goulart*, 2025 WL 1745732, at *4 n.3; *Okash*, 2024 WL 1285779, at *4.

**c. *The Predicate Offenses Fail On Their Own Terms***

The "purpose" element of Plaintiffs' ECPA claim also fails because the Complaint does not plausibly allege that Riverside committed any of the predicate offenses invoked in support of the crime-tort exception. This defeats "purpose" for a simple reason: If Plaintiffs have not plausibly alleged that Riverside committed any of the crimes or torts they invoke, then it is not plausible that Riverside intercepted Plaintiffs' communications "for the purpose of committing" those acts. 18 U.S.C. § 2511(2)(d). As set forth below, each purported ground fails on its merits:

**HIPAA**. The Complaint does not plausibly allege that Riverside disclosed "individually identifiable health information" ("IIHI")—the threshold requirement of a criminal HIPAA violation under Section 1320d-6(a). *See Nguyen*, 2026 WL 579206, at *3. Under HIPAA's implementing regulations, IIHI is a subset of health information, created or received by a health care provider, that (a) "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual," and (b) either "identifies the individual" or provides "a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103. The Complaint's allegations fail both prongs.

***First***, the data allegedly transmitted does not plausibly "relate to" either named Plaintiff's health. The Complaint does not allege what medical conditions Michniak has or why she visited the pages she visited; and while Ritchie's allegations reference specific medical conditions (Compl. ¶ 249), the Complaint does not connect those conditions to any particular information he entered into or searched for on the Website. The absence of such allegations is fatal. *See Watson v. Franciscan Alliance, Inc.*, 2026 WL 1694563, at *5–6 (N.D. Ill. June 11, 2026) (Lefkow, J.) (dismissing ECPA claim where plaintiff's complaint "tell[s] the court virtually nothing about the specific pages she clicked on, when she visited them, her medical conditions, any treatments sought, or her history of care").

Moreover, although the Complaint alleges that both Plaintiffs used the Website to "login to MyChart" (Compl. ¶¶ 49–50), it does not allege that any data from within the authenticated patient portal was transmitted to third parties via the Tracking Tools. To the contrary, every URL the Complaint ties to Michniak and Ritchie references publicly accessible pages on Riverside's Website—including unauthenticated landing and login pages—not pages or data from within an authenticated browsing session. (*See* Compl. ¶¶ 234, 246.) And further, the screenshot figures included in the Complaint only show the transmission of page URLs, click-event labels, client IDs, and cookie values—making it even less plausible that Plaintiffs' substantive health information was transmitted. *See Nguyen,* 2026 WL 579206, at *4 (screenshots "preclude[d] plaintiffs from plausibly alleging that [defendant's] website transmitted their protected health information"); *accord Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 802 (N.D. Tex. 2024).

***Second***, the data does not "identif[y] the individual." 45 C.F.R. § 160.103. The Complaint cycles through varying labels—"persistent" identifiers, "unique" identifiers, "device" identifiers, "cookie" identifiers, and "personal" identifiers (*see, e.g.*, Compl. ¶¶ 98, 119, 215–

217, 235, 247)—as though the modifier itself establishes that the data identifies a flesh-and-blood person, which is all HIPAA cares about. But Plaintiffs' allegations include no well-pled facts showing that these items serve to identify them. *Cf. Am. Hosp. Ass'n*, 738 F. Supp. 3d at 803–04 (rejecting proposition that IP addresses associated with public-webpage browsing supply a "reasonable basis" to identify the individual).[7] The Complaint compounds this error by treating the eighteen (18) data elements listed in HIPAA's de-identification safe harbor, 45 C.F.R. § 164.514(b)(2)(i), as though they were "HIPAA identifiers" whose mere presence renders data individually identifiable. (*See* Compl. ¶¶ 145–147, 204–221.) But the safe harbor establishes that ***removing*** those 18 elements suffices to conclude that data ***is not*** individually identifiable; it does not follow that the ***inclusion*** of any such element means the data ***is*** individually identifiable.[8] Finally, the Complaint is fatally vague about which cookies were actually transmitted as to the named Plaintiffs: it catalogues cookies Google uses generally, (Compl. ¶¶ 55, 69–70), and identifies three Riverside allegedly installed, (Compl. ¶ 56); but as to Michniak and Ritchie alleges only that unspecified "cookie identifiers" were transmitted (Compl. ¶¶ 235, 247), leaving the Court unable to assess whether any alleged cookie at issue could plausibly identify a person.

**Trespass to Chattels**. The Complaint alleges that Tracking Tools were "placed" on users' devices (Compl. ¶ 292(d)), but it does not allege that those tools damaged, degraded, or impaired the functioning of any device or deprived any Plaintiff of its use—elements without

---

[7] This contrasts with cases in which ECPA plaintiffs were found to have plausibly alleged a HIPAA violation after specifically alleging that their Facebook ID's or comparable social media identifiers—which would allow anyone in the world to identify the plaintiff, specifically—were transmitted alongside specific health information. *See, e.g.*, *Smith*, 2024 WL 3338941, at *1–2.

[8] It would be absurd to conclude that each of the 18 items enumerated in HIPAA's de-identification safe harbor inherently identify an individual—among the included items are zip codes, which may correspond to *thousands of people*. 45 C.F.R. § 164.514(b)(2)(i).

which trespass to chattels does not lie under Illinois law. *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005). This predicate fails.

**Wire Fraud**. For the reasons set forth in Section A, *supra*, Plaintiffs' own "sole purpose" admission independently forecloses the specific intent wire fraud requires. Even setting that aside, Plaintiffs fail to satisfy all required elements: the Complaint identifies no scheme to defraud distinct from the use of tracking technology, no specific misrepresentation, and no intent to obtain property by false pretenses—none of which a generic allegation of commercial analytics deployment can supply. *United States v. Fard*, 775 F.3d 939, 944 (7th Cir. 2015) (wire fraud requires proof of a scheme or artifice to defraud and specific intent to defraud). This predicate fails too.

**410 ILCS 5/30**. Finally, the statute cited at Complaint ¶ 292(e) is the macabrely named Burial of Dead Bodies Act; the cited subsection does not appear to exist; and the Complaint offers no explanation of how a provision governing the proper disposition of human remains could constitute a predicate offense for purposes of § 2511(2)(d). This predicate also fails.

In sum, none of the four predicate offenses the Complaint invokes—HIPAA, trespass to chattels, wire fraud, or 410 ILCS 5/30—states a viable basis for the crime-tort exception. Because the Complaint does not plausibly allege that Riverside intercepted any communication "for the purpose of committing any criminal or tortious act," Plaintiffs cannot overcome § 2511(2)(d)'s one-party consent defense, and the Wiretap Act claim should be dismissed.

## III. Plaintiffs Fail to State a Negligence Claim

Plaintiffs' common law negligence claim fails because Plaintiffs cannot identify any cognizable duty of care. Plaintiffs advance six theories of duty: (i) a common law duty to safeguard personal information; (ii) a duty to prevent foreseeable harm; (iii) a duty arising from a "special relationship" with Plaintiffs, including the physician-patient relationship; (iv) a statutory

duty under HIPAA; (v) a duty arising from Riverside's privacy-notice promise; and (vi) a fiduciary duty. (*See* Compl. ¶¶ 307–317.) None is viable. Binding Seventh Circuit precedent confirms that Illinois does not recognize a common law duty to safeguard personal information, which disposes of Plaintiffs' first two theories, and the remaining four each fail independently.

### A. Plaintiffs Fail to Allege a Duty of Care Recognized by Illinois Law

Plaintiffs' first two theories of duty can be rejected out of hand because Illinois courts have directly addressed whether the common law imposes a duty to safeguard personal information and have said no. In *Cooney v. Chicago Public Schools*, the Illinois Appellate Court held that no such duty exists. 943 N.E.2d 23, 28–29 (Ill. App. Ct. 2010). The Seventh Circuit later endorsed *Cooney*'s reasoning and, applying the *Erie* doctrine, predicted the Illinois Supreme Court would agree. *See Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 816–17 (7th Cir. 2018) (affirming dismissal of negligence claim premised on purported common law duty to safeguard customers' personal financial data). That prediction binds this Court. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). Consequently, Plaintiffs' first theory—that there is a general common law duty to safeguard personal information—is directly foreclosed by Circuit law. And their second theory, that Riverside breached a duty to prevent foreseeable harm, fares no better: applied to the alleged disclosure of personal information, it necessarily presupposes the very duty that *Schnuck Markets* and *Cooney* hold does not exist.

Plaintiffs' other theories of duty each fail independently for the reasons set forth below.

***First***, the physician–patient relationship does not give rise to a common law tort duty to protect health data under Illinois law. Plaintiffs contend that Riverside's "special relationship" with them as patients created a duty to safeguard their Private Information from unauthorized disclosure. (Compl. ¶ 309.) But the physician–patient privilege "did not exist at common law," and so communications between physicians and patients were themselves unprotected until the

Illinois legislature amended the Code of Civil Procedure in 1959 to create the privilege by statute. *People, Dep't of Pro. Regul. v. Manos*, 326 Ill. App. 3d 698, 705 (1st Dist. 2001)*; see also Parkson v. Cent. DuPage Hosp.*, 105 Ill. App. 3d 850, 852 (1st Dist. 1982) (same). Because the relationship was unprivileged at common law, no common law cause of action for breach of medical confidentiality developed alongside it. *See Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 845 (N.D. Ill. 2023). Recognizing a new common law duty would therefore extend protection beyond what the Illinois legislature has seen fit to confer, which is precisely what *Cooney* counsels against. *See* 943 N.E.2d at 29.

Even assuming the existence of a physician–patient duty to safeguard health data were an open question—and it is not—the Illinois Supreme Court's traditional multi-factor duty analysis would independently foreclose its recognition. That framework requires evaluation of the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 396 (Ill. 1987). Each factor weighs against imposing a data-protection duty here: the likelihood of cognizable injury from standard analytics tools deployed on a public website is speculative at best; the burden would be substantial and indeterminate, requiring healthcare providers to audit the data practices of every third-party vendor whose code appears on their sites; and the consequences would be severe, imposing open-ended tort liability on every hospital that uses commercially available web analytics—a result no Illinois court has endorsed.

***Second***, HIPAA cannot supply the duty element of a state-law negligence claim. A statute may bear on negligence in one of two ways: it may define the standard of care applicable to a duty that already exists at common law, or it may itself create a new duty enforceable through a private right of action. HIPAA can do neither. A statutory standard of care "does not

come into play unless the tort plaintiff establishes that the defendant owes a duty of care to the person he injured," *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004), and a statute "does not in and of itself create a duty enforceable by tort law"—otherwise "every statute in effect would create an implied private right of action—which clearly is not the law," *id.* Because the common law does not recognize a duty to safeguard health data, HIPAA has no existing duty to define; and because Congress chose not to furnish a private remedy, HIPAA cannot be construed as supporting a common law duty whose breach warrants such a remedy. *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019) (HIPAA "confers no private right of action"); *Brown v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 81340, at *6 (N.D. Ill. Jan. 13, 2025) ("state law claims that rely on HIPAA as the basis for establishing negligence are not cognizable because utilizing them in such a way would circumvent HIPAA's enforcement mechanisms"). Because HIPAA neither (i) defines a common law duty that does not exist, nor (ii) independently creates one, a purported violation of HIPAA cannot support Plaintiffs' negligence claim.

***Third*,** Plaintiffs cannot ground a duty of care in Riverside's promise—set forth in its Notice of Privacy Practices—that it would not "sell [Plaintiffs'] medical information or use or disclose it for marketing without [Plaintiffs'] prior written authorization." (Compl. ¶ 126.) The Complaint alleges that Plaintiffs "trusted" Riverside and provided their Private Information in reliance on that promise, and that the promise therefore gave rise to a duty to safeguard their data. (Compl. ¶ 312.) But a voluntary promise does not create a common law duty that does not otherwise exist; broken promises sound in contract, not in tort.

This District's recent decisions in *Doe v. Genesis Health System* and *Doe 1 v. Chestnut Health Systems, Inc.* illustrate the point. In each case, the court dismissed negligence claims for

want of a duty to safeguard personal information—yet allowed breach-of-contract claims predicated on the defendants' privacy-notice promises to proceed. *Genesis Health Sys.*, 2025 WL 1000192, at *4–6; *Chestnut Health Sys.*, 2025 WL 1616635, at *3, *5. If a privacy-notice promise were sufficient to establish a tort duty, there would have been no reason to dismiss the negligence claims in those cases. Riverside's data privacy policies may define the parties' contractual obligations, but they cannot supply the missing duty element of a negligence claim.

***Fourth***, and finally, Plaintiffs contend that Riverside owed them a fiduciary duty to protect the confidentiality of their Private Information, grounded in the "explicit privacy representations" Riverside made on its Website (Compl. ¶ 317) and the "special relationship" Plaintiffs say arose because they were "compelled to entrust" their Private Information to Riverside (Compl. ¶ 309). Neither theory establishes a fiduciary obligation.

A fiduciary duty arises "as a matter of law" from "principles of agency, contract, and equity." *Miller v. Harris*, 2013 IL App (2d) 120512, ¶ 19. A unilateral statement in a privacy notice does not give rise to the kind of agency, contractual, or equitable relationship from which fiduciary obligations spring. *Id.* And the allegation that Plaintiffs were "compelled to entrust" their data to Riverside merely restates, in different terms, the duty to safeguard personal information that Illinois law does not recognize. Even if Plaintiffs could somehow establish that Riverside owed them fiduciary duties, their negligence claim would still fail because "there is no cause of action in Illinois for negligent or grossly negligent breach of fiduciary duty." *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 2014 IL App (1st) 111290, ¶ 95.

Because no cognizable theory of duty supports Plaintiffs' negligence claim, Count II must be dismissed as a matter of law.

**CONCLUSION**

For the reasons set forth above, the Complaint fails to state a claim upon which relief can be granted. Accordingly, the Court should grant Riverside's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and dismiss the Complaint in its entirety.

Date: July 27, 2026

Respectfully submitted,

*/s/ David M. Poell*
David M. Poell (#6302765)
Jules M. Rogers (#6339599)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
321 N. Clark St., 32nd Floor
Chicago, IL 60654
Tel: (312) 499-6300
Fax: (312) 499-6301
dpoell@sheppard.com
mrogers@sheppard.com

*Counsel for Defendant Riverside Health System*

**CERTIFICATE OF COMPLIANCE**

This Defendant Riverside Health System's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Class Action Complaint complies with the type volume limitations of Local Rule 7.1(B)(4) because it contains **6,992** words, inclusive of all headings and footnotes.

By: */s/ David M. Poell*
David M. Poell

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2026, I electronically filed the foregoing **DEFENDANT RIVERSIDE HEALTH SYSTEM'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system, which effects service on all counsel of record.

By: *<u>/s/ David M. Poell</u>*
David M. Poell